## ATLANTIC GREYHOUND LINES, INC., v. ISABELLE.

### No. 9142.

United States Court of Appeals District of Columbia.

Argued May 22, 1946.

Decided June 28, 1946.

---

[9] See also Hancey v. United States, 10 Cir., 108 F.2d 835, 837, and cases cited.

[10] D.C.Code 1940, § 14—307.

Mr. Henry I. Quinn, of Washington, D. C., for appellant.

Mr. William A. Blank, of Brooklyn, N. Y., for appellee.

Before GRONER, Chief Justice, and EDGERTON and CLARK, Associate Justices.

CLARK, Associate Justice.

This is an appeal from a judgment of the District Court based on a jury verdict in favor of the plaintiff awarding damages in the amount of $10,000 for injuries resulting from an accident in 1936 in which Isabelle was injured while riding in a Greyhound bus.[1]

As disclosed by the record, the accident occurred on the night of June 30, 1936, at Natural Bridge, Virginia. It appears that the bus turned over and burned, injuring several passengers who were taken from the scene to a nearby hotel. During the night and the following morning appellee, plaintiff below, and other passengers were examined by a physician in the employ of the Greyhound Lines. Appellee was given treatment for minor cuts and abrasions and allegedly signed a release.[2]

On behalf of the plaintiff it was shown that at the time of the accident he was in the armed services. On the day following the accident he proceeded to Trenton, New Jersey, on transportation furnished by Greyhound, and from Trenton to Camp Dix, where upon his arrival he was admitted to the army hospital, examined, treated, and released for return to duty within about four days. Later, the plaintiff, at the suggestion of counsel, called upon a neurological expert who found that he was suffering from a brain injury which, among other things, resulted in visual disturbances, exaggerated reflexes, diminished right hand grip, and paresis of the right arm and leg as well as central facial paralysis. This medical expert was called on behalf of the plaintiff and testified that he had examined plaintiff on February 1, 1937, and that in his opinion the injuries were permanent. Plaintiff testified that he had suffered serious and continuing disability as a result of the accident. He remained in the army until 1940, when he was released because of an accidental gun shot wound of his right hand.

In our view of this case it is not necessary to discuss the entire argument made by appellant. Our attention is focused upon a single trial occurrence and ruling by the lower court which we think requires a new trial.

Plaintiff testified that he was rendered unconscious in the accident and that the morning following the accident he was in a semi-conscious condition, unable to

---

[1] The action was commenced in March, 1937.

[2] On a separate trial in January of 1941, it was decided, on the basis of a jury verdict, that the release was void and without force. Thus, the instant trial proceeded on the main issues of negligence and damages. In the course of the trial, the defendant admitted liability. The case was therefore submitted to the jury only on the issue of damages.

move about without assistance and suffering from an injured right hand which precluded his writing his own name without assistance. On cross-examination defense counsel desired to show that the plaintiff was able to sign his name legibly, and in his customary penmanship, on the morning following the accident. This line of questioning was objected to by the plaintiff on the theory that there would thereby be raised again the issue of the validity of the release, because the signature which defendant desired to prove was placed on the release. Plaintiff's counsel convinced the trial court that to permit the defendant to pursue this line of questioning would allow the opening up of the entire question of the release and make it necessary for plaintiff to proceed with an elaborate rebuttal aimed at showing how the signature came into existence.

We think that the defense was entitled to make such a cross-examination.[3] We do not think that it was sufficient that defense counsel was permitted to ask his own witness, the company doctor, if he had seen plaintiff sign his name, and without assistance, on the morning following the accident.

Counsel for the defendant was agreeable to covering all but the signature, or otherwise keeping from the jury the fact that the signature which he desired to prove, was affixed to a release. The evidence sought to be adduced was not only competent but highly relevant and material to a major contention of the defense, namely, that the plaintiff was not in a state of semiconsciousness and was not suffering from grievous injuries on the morning following the accident. We think the trial court erred in refusing to allow this line of cross-examination directed, as it was, only to establishing the fact that plaintiff signed his name during the time in question, and that the signature was comparable to that made at other times. Basically this item of proof had nothing to do with the validity of the release, and if the fact of release should unavoidably become known to the jury that fact could be controlled by the trial court through instructions.

Reversed and remanded.

---

[3] See Mintz v. Premier Cab Ass'n, 75 U.S.App.D.C. 389, 127 F.2d 744, quoting from Washington, Railway & Electric v. Dittman, 44 App.D.C. 89, 92: "Generally it is proper to permit upon cross-examination the bringing out of anything tending to contradict, modify or explain the testimony given by a witness in his direct examination."